IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RAFAEL ALVAREZ-VALENCIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:23-cv-00407-BL |
| | ) | |
| DRUG ENFORCEMENT | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On June 23, 2023, Plaintiff Rafael Alvarez-Valencia ("Alvarez-Valencia") brought this action seeking the return of property that agents with the United States Drug Enforcement Administration ("DEA") seized from his residence on February 28, 2019, including $7,725.00 U.S. Currency, a 2014 Ford F-150 Supercrew, and a 2013 Ford F-150 STX. (Doc. 1 at 5).  He is seeking the release and return of the currency, compensation for the forfeited vehicles, and compensation for the cost of therapy for his wife and daughters who were present during the seizure of the property. *Id*. This cause is before the court on a Motion to Dismiss filed by the DEA. (Doc. 39). For the reasons given below, the motion will be granted.

## I.    FACTS AND PROCEDURAL HISTORY

On February 28, 2019, $7,725.00 U.S. Currency, a 2014 Ford F-150 Supercrew, and a 2013 Ford F-150 STX were seized from Alvarez-Valencia's

residence located at 2137 East Aberdeen Drive in Montgomery, Alabama, as part of the execution of a federal search and seizure warrant for a criminal case that originated in the Northern District of Georgia. *See U.S. v. Juan Torres Chaves, et al.*, No. 1:19-CR-76-LMM-CCB-14.[1]

With respect to the currency seizure, on March 29, 2019, notice of the seizure and initiation of administrative forfeiture proceedings was sent to Alvarez-Valencia by certified mail at the Robert A. Deyton Detention Facility where he was incarcerated; his residence at 2137 East Aberdeen Drive in Montgomery, Alabama; and to his wife, Alma Heredia-Meza, at 2137 East Aberdeen Drive in Montgomery, Alabama. (Doc. 39-1 at 2–3, 12–20, 27–30).[2] Delivery of all three notices was accepted by way of signature.[3] (*Id.* at 2–3, 15, 20, 30). Notice was also posted on www.forfeiture.gov for thirty days from April 15, 2019, to May 14, 2019. (*Id.* at 4, 32–33). The currency was administratively forfeited on July 17, 2019, after appropriate publication and no claim had been filed. (*Id.* at 4, 35).

---

[1] When ruling on a motion to dismiss for failure to state a claim, a court may take judicial notice of documents that are a matter of public record. *See, e.g., Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

[2] Notice of seizure for all assets was also sent to Alvarez-Valencia at 1740 Flatwood Road, Wetumpka, Alabama, but the letter was returned to sender. (Doc. 39-1 at 3, 6, 8–9, 22–25, 47–51, 96–99).

[3] Both notices sent to Alvarez-Valencia's residence address at 2137 East Aberdeen Drive were signed and accepted by "Alma Heredia." (Doc. 39-1 at 20, 30).

2

With respect to the seizure of the Ford vehicles, on March 29, 2019, notice of the seizure and initiation of administrative forfeiture proceedings was sent to Alvarez-Valencia by certified mail at the Robert A. Deyton Detention Facility and to his residence at 2137 East Aberdeen Drive. (*Id.* at 4–9, 37–45, 86–94). Delivery of the notices was accepted by way of signature at both locations.[4] (*Id.* at 4–6, 7–9, 40, 45, 89, 94). Notice was also posted on www.forfeiture.gov for thirty days from April 15, 2019, to May 14, 2019. (*Id.* at 6, 9, 52, 101).

On April 29, 2019, the DEA received a claim and petition for remission or mitigation of forfeiture from Ms. Heredia-Meza for the two Ford vehicles. (*Id.* at 9, 55–71). The DEA subsequently sent Ms. Heredia-Meza a letter stating that the petition had been "accepted," and the claim was referred to the U.S. Attorney's Office. (*Id.* at 10, 73–74). Her petition was denied on February 23, 2021, because she "failed to satisfy the innocent owner requirements of 18 U.S.C. § 983, as required by 28 C.F.R. § 9.5(a)" and did not "demonstrate circumstances that warrant mitigation under 28 C.F.R. § 9.5.(b)." (*Id.* at 83).

Meanwhile, after Ms. Heredia-Meza filed her DEA petition but before it was denied, the government filed a forfeiture petition in this court. *See United States of America v. 2014 Ford F-150 Supercrew Truck, et al.*, Case No. 2:19-cv-591-MHT-

---

[4] As with the notices concerning the currency seizure and forfeiture proceedings, Alma Heredia signed the notice sent to Alvarez-Valencia's residence address for the two Ford vehicles. (Doc. 39-1 at 45).

SRW. On February 18, 2020, this court issued a decree of forfeiture in the case and found that "process was fully issued in this action and returned according to law" pursuant to a warrant of arrest *in rem* issued by the court on August 27, 2019. (*Id*. at 76). This court found that on September 17, 2019, Ms. Heredia was "personally served by a deputy United States Marshal with copies of the Notice of Complaint for Forfeiture against Personal Property, Verified Complaint for Forfeiture *In Rem*, and Warrant of Arrest *In Rem.*" (*Id*. at 77). On September 18, 2019, Alvarez-Valencia was also "personally served by a deputy United States Marshal" with copies of the same. (*Id*. at 77). This court found that notice of the civil forfeiture was published for 30 consecutive days on an official government website. (*Id*. at 77). The two vehicles were forfeited to the United States because default was entered against Alvarez-Valencia and Ms. Heredia-Meza for failure to timely defend as set forth in 18 U.S.C. § 983(a)(4)(A). (*Id*. at 10, 77–78).

On June 23, 2023, Alvarez-Valencia filed the instant Complaint under 42 U.S.C. § 1983 against "all arresting officers" of the DEA in their official capacity, alleging that they "stole $7,725" and "stole [his] vehicles knowing that there was no drugs in the vehicles" and that they "were not involved in a crime." (Doc. 1 at 1–4).

## II.    DISCUSSION

### A.    Section 1983 Claims

As a preliminary matter and as the Court previously noted, although Alvarez-Valencia filed this action on a form used by inmates to file actions pursuant to 42 U.S.C. § 1983, he seeks the return and release of property seized by a government agency rather than redress for alleged violations of his constitutional rights. (*See* Doc. 8 at 1). However, to the extent Alvarez-Valencia intended to assert claims for due process violations or other constitutional violations under § 1983, they will be dismissed due to the expiration of the statute of limitations. The assets were seized from Alvarez-Valencia's residence on February 28, 2019; the administrative forfeiture of his currency was completed on July 17, 2019; the judicial forfeiture of his vehicles was completed on February 18, 2020; and this Complaint was initiated more than three years later on June 23, 2023. (Doc. 1 at 1, 5). The statute of limitations applicable to actions brought under 42 U.S.C. § 1983 is two years. *Owens v. Okure*, 488 U.S. 235, 249–50 (1989); *Ala. Code* § 6-2-38(l). Thus, any § 1983 claims are time barred and will be dismissed.[5]

---

[5] Section 1983 allows a plaintiff to sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. To be liable under section 1983, a defendant's infringement must be "fairly attributable to the State." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citing *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)). Because the DEA and its arresting officers here were acting in their official capacity as federal DEA agents, they were not acting under the color of state law, and section 1983 is improperly invoked. Under *Bivens v. Six Uknown Federal Agents*, 403 U.S. 388 (1971), a plaintiff may sue federal officials for the violation of certain constitutional rights. However, the cause of

## B.    Forfeiture Claims

As the government noted in its motion, the DEA seized and forfeited Alvarez-Valencia's assets pursuant to 21 U.S.C. § 881(a)(6), which provides that all proceeds and property traceable as proceeds of a violation of the federal drug laws are subject to forfeiture by the United States. 21 U.S.C. § 881(a) and (d). Forfeiture of assets may proceed under a nonjudicial forfeiture (an administrative forfeiture) or a judicial forfeiture. As explained above, because no party in interest filed a claim for the $7,725 in U.S. currency, it was administratively (i.e., nonjudicially) forfeited on July 17, 2019. Alvarez-Valencia's wife submitted a claim for the two Ford vehicles, as well as a petition for remission or mitigation of forfeiture, so the DEA submitted the claim to the United States Attorney's Office for the Middle District of Alabama to commence judicial forfeiture proceedings.

Because Alvarez-Valencia's assets were forfeited by two different procedural means, they will be addressed separately.

---

action must be brought against the officer acting in his individual capacity, not his official capacity. *Id.*; *F.D.I.C. v. Meyer*, 510 U.S. 471, 484–86 (1994). Because Alvarez-Valencia is suing the federal government agency and the unnamed officers in their "official capacity" (*see* Doc. 1 at 2), this Complaint is not a *Bivens* claim. However, even if this Court were to construe the Complaint as a *Bivens* claim, Alvarez-Valencia's claims would still be barred by the applicable two-year statute of limitations. *See McIntire v. United States*, 884 F. Supp. 1529, 1531–32 (M.D. Ala. 1995); *Ala. Code* § 6-2-38(l).

### 1.     $7,725.00 U.S. Currency

It is well settled that federal courts lack subject matter jurisdiction over challenges to the merits of an administrative forfeiture decision made by the DEA. *See Valderrama v. United States*, 417 F.3d 1189 (11th Cir. 2005). Section 983(e) is the exclusive remedy for seeking to set aside a declaration of forfeiture. 18 U.S.C. § 983(e)(5); *see Valderrama*, 417 F.3d at 1196. Under section 983, the court's review is limited to determining whether the agency followed the proper procedural safeguards. *Id.*

Construing Alvarez-Valencia's Complaint as a section 983(e) motion, he is entitled to no relief. To satisfy the required procedural safeguards, the DEA was required to send "[w]ritten notice of seizure together with information on the applicable procedures" to Alvarez-Valencia. 19 U.S.C. § 1607(a)(4); *see also* 18 U.S.C. § 983(a) and 28 C.F.R. § 8.9 (b) (requiring the seizing agency to "send personal written notice of the seizure to each interested party in a manner reasonably calculated to reach such parties"). Likewise, after seizing property subject to administrative forfeiture, the seizing agency shall post "a notice on an official internet government forfeiture site for at least 30 consecutive days." 28 C.F.R. § 8.9 (a)(1)(ii).

The DEA has presented evidence that on March 29, 2019, personal written notice was sent to Alvarez-Valencia by certified mail at the Robert A. Deyton

Detention Facility where he was being held, his residence at 2137 East Aberdeen Drive, and to his wife at the same address. (Doc. 39-1 at 2-3, 12-20, 27-30). All three notices were signed and accepted. (*Id*. at 2-3, 15, 20, 30). Notice was also posted on www.forfeiture.gov for thirty days from April 15, 2019, to May 14, 2019. (*Id*. at 4, 23). Thus, the statutory notice requirements were met here.

Further, the DEA gave Alvarez-Valencia "notice reasonably calculated, under all the circumstances, to apprise [him] of the pendency of the action and afford [him] an opportunity to present [his] objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Dusenberry v. United States*, 543 U.2. 161, 167-71 (2002). Sending certified mail to a prisoner at the detention facility where he is incarcerated is presumptively sufficient notice, and Alvarez-Valencia gives no compelling reason for rejecting that presumption in this case. *United States v. Sewell*, 2014 WL 4599803, at *4 (M.D. Ala. Sep. 12, 2014) (citing *Whiting v. United States*, 231 F.3d 70, 76-77 (1st Cir. 2000)); *see also Dusenberry*, 534 U.S. 161 at 171–73 (in case where FBI began administrative process to forfeit cash seized during execution of a search warrant, noting that "our cases have never required actual notice" and finding "the use the of mail addressed to petitioner at the penitentiary was clearly acceptable" and "reasonably calculated, under all the circumstances to apprise [petitioner] of the pendency of the action") (internal quotations omitted). The fact that Alvarez-Valencia may not have received actual

notice before the forfeiture does not deem the DEA's notice constitutionally inadequate. *Jones v. Flowers*, 547 U.S. 220, 226 (2006) ("Due process does not require that a property owner receive actual notice before the Government may take his property.").[6] Thus, the DEA's notice of the seizure and administrative forfeiture of Alvarez-Valencia's currency was sufficient.[7]

While federal courts may exercise equitable jurisdiction over DEA forfeiture decisions, this court declines to do so here. *See United States. v. Eubanks*, 169 F.3d 672, 674 (11th Cir. 1999). Equitable jurisdiction is "highly discretionary and must be exercised with caution and restraint." *Id.* Jurisdiction is only appropriate if the defendant's conduct and the merits of his motion "require judicial review to prevent

---

[6] *See also United States v. Randall*, 976 F. Supp. 1442, 1448 (M.D. Ala. 1997) (noting that actual notice of a civil forfeiture proceeding was not required under 19 U.S.C.A. § 1607(a)) (citing *United States v. Hinojosa,* 120 F.3d 269, 1997 WL 415336, at *2 (9th Cir. July 24, 1997) ("That [claimant] was incarcerated at the time and may have not received actual notice, either by mail or through publication, is not legally relevant as actual notice is not required by law.") (unpublished disposition); *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir. 1988) ("The proper inquiry is whether the state acted reasonably in selecting means likely to inform [the] persons affected, not whether each property owner actually received notice."), *cert. denied,* 488 U.S. 1005, 109 S. Ct. 785, 102 L. Ed. 2d 777 (1989); *Pou v. United States Drug Enforcement Admin.,* 923 F. Supp. 573, 578 (S.D. N.Y. 1996) ("Neither due process nor the relevant forfeiture statute requires that a forfeiture claimant actually receive timely notice of an impending forfeiture."), *aff'd,* 107 F.3d 3 (2d Cir. 1997)).

[7] The Court notes that, in filing this action, Alvarez-Valencia raised no allegations about a lack of notice of the seizures or the forfeiture proceedings. His only complaints were that his "hard earned" money was seized and that the vehicles were seized even though they had no drugs in them. (Doc. 1 at 4, 5). He raised the issue of notice after the DEA filed its Answer and Special Report (Doc. 25), and at that point he argued there was nothing to indicate that he received actual notice at his detention facility, that he did not have access to the internet, and that the government "is presuming" he and his wife were communicating. (Doc. 27 at 1–2).

9

manifest injustice." *Id.* Because notice was adequate, it is inappropriate for this court to exercise equitable jurisdiction to review the merits of this administrative forfeiture decision when Alvarez-Valencia elected to forgo the procedure to pursue an adequate remedy at law. *Id.* Thus, the DEA's motion to dismiss will be granted as to the $7,725.00 in U.S. currency.

### B.    2014 Ford F-150 Supercrew and 2013 Ford F-150 STX

As noted above, the two Ford vehicles were forfeited by this court in a civil judicial forfeiture proceeding. (Doc. 39-1 at 10, 76–78). This court entered a final decree of forfeiture on February 18, 2020. (*Id*. at 10, 76–78). If Alvarez-Valencia wished to challenge the forfeiture order entered against him, he was required to file an appeal within thirty days of the entry of the order. *See* Fed. R. App. P. 4(a). As Alvarez-Valencia did not timely—or ever—file a direct appeal of the forfeiture order, the forfeiture orders against him are final.

If this court were to liberally construe Alvarez-Valencia's complaint as a Rule 60(b) motion for relief from a final judgment, his Complaint would still be dismissed. *See Abimbola v. Broward County*, 266 Fed. App'x 908, 910 (11th Cir. 2008) ("We liberally read briefs filed *pro se.*") (internal citations omitted). Review of a Rule 60(b) motion is "narrow and deferential and does not involve review of the underlying judgment." *Watson v. Lake County*, 492 Fed. App'x 991, 994 (11th Cir. 2012) (internal citations omitted). It is incumbent upon the movant to show grounds

in his motion "so compelling" that the court must grant the Rule 60(b) motion. *Id.* However, Rule 60(b) "cannot be used as a substitute for a proper and timely appeal of the district court's judgment." *Id.* (internal citations omitted). Because Alvarez-Valencia did not timely appeal the final decree of forfeiture, his Complaint should not be construed as a Rule 60(b) motion to improperly circumvent Federal Rule of Appellate Procedure 4(a). Even if this court did consider Alvarez-Valencia's claim under Rule 60(b), he has not alleged grounds "so compelling" that this Court should grant relief.[8]

Moreover, the judicial proceeding resulted in default in favor of the Government due to Alvarez-Valecia's failure to timely defend, so any subsequent action to relitigate the forfeiture proceeding is barred by claim preclusion, or *res judicata*. "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the

---

[8] Pursuant to Rule 60(b), a court may grant relief from final judgment for the following reasons: 1) mistake, inadvertence, surprise, or excusable neglect; 2) newly discovered evidence; 3) fraud, misrepresentation, or misconduct by an opposing party; 4) void judgment; 5) judgment that has been satisfied, released, or discharged; or 6) any other reason that justifies relief. *See Watson*, 492 Fed. App'x at 994. Alvarez-Valencia alleges none of these reasons in his Complaint. He asserts only that his vehicles should be returned to him because the DEA did not find drugs inside of them (Doc. 1 at 4; Doc. 43 at 2) and that there is nothing to indicate that he actually received notice of the forfeiture (Doc. 27 at 2).

11

earlier suit." *Id.* (internal quotations omitted). For claim preclusion to apply, the following four elements must be present:

> First, the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process. Second the judgment must be final and on the merits. Third, there must be identity of both parties or their privies. Fourth, the later proceeding must include the same cause of action as involved in the earlier proceeding.

*In re Atlanta Retail, Inc.*, 456 F.3d 1277, 1285 (11th Cir. 2006) (internal citations omitted). When all elements of claim preclusion are met, the judgment or decree in the first case "is an absolute bar to the subsequent action or suit between the same parties. . . ." *Id.* (internal citations omitted).

All four elements of claim preclusion are met here. First, there is no dispute that this court had jurisdiction over the forfeiture action of the two trucks under 28 U.S.C. §§ 1345 and 1355(a). (Doc. 1 at 15). Second, the final decree of forfeiture was a final judgment on the merits for the purpose of claim preclusion because "dismissals for failure to prosecute may serve as judgments with preclusive effect."[9] *In re Erkelens*, 742 Fed. App'x 477, 481 (11th Cir. 2018);[10] *see also Phillips v.*

---

[9] A failure to prosecute and a failure to defend are the same for purposes of entering a default judgment. *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed *to plead or otherwise defend*, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.") (emphasis added).

[10] In *In re Erkelens*, the Eleventh Circuit construed a default judgment for failure to prosecute to be in the same vein as an involuntary dismissal of an action for failure to prosecute under Federal Rule of Civil Procedure 41(b). 742 Fed. App'x at 481. As the final decree of forfeiture here was

*Montoya*, 253 So. 3d 438, 441 (Ala. Civ. App. 2017) ("We note, however, that [the Alabama] supreme court has held that a default judgment constitutes a 'prior judgment on the merits' for purposes of res judicata." (quoting *McDonald v. U.S. Die Casting & Dev. Co.*, 628 So. 2d 433, 433-34 (Ala. 1993)); *see also Watkins v. Lanier Lakes Homeowners Ass'n, Inc.*, No. 5:23-CV-1266-LCB, 2025 WL 2394342, at *3 (N.D. Ala. Aug. 18, 2025) (noting that the Alabama Supreme Court has held that default judgments constitute prior judgment on the merits).

Third, Alvarez-Valencia and Ms. Heredia-Meza were both parties to the initial forfeiture action in which default was entered, and that action was brought by the United States Government. (Doc. 39-1 at 77). Although Alvarez-Valencia names the DEA and arresting officers as the defendants in this case, the DEA and its officers are in privity with the United States Government who brought the forfeiture action. *Ardis v. Anderson*, 662 F. App'x 729, 732 (11th Cir. 2006) (citing *Estevez v. Nabers*, 219 F.2d 321, 323 (5th Cir. 1955) ("[T]he government, its officers, and its agencies are regarded as being in privity for such purposes [as res judicata].")). Likewise, prior rulings in favor of the United States are binding on the DEA. *See Sunshine Anthracite Coal v. Adkins*, 310 U.S. 381, 402 (1940) ("There is privity between officers of the same government so that a judgment in a suit between a party and a

---

the result of a default judgment for failure to timely defend, this court will construe the decree as did the Eleventh Circuit, as a dismissal for failure to prosecute with preclusive effect.

13

representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government.").

The instant action is an attempt to relitigate the same cause of action as the earlier proceeding: the forfeiture of the 2014 Ford F-150 Supercrew and 2013 Ford F-150 STX. "The principal test for comparing causes of action for the application of res judicata is whether the primary right and duty or wrong are the same in each action." *Kizzire v. Baptist Health Sys., Inc.,* 441 F.3d 1306, 1308–09 (11th Cir. 2006) (internal quotations and citations omitted). "Res judicata applies not only to the exact legal theories advanced in the prior case, but to all legal theories and claims arising out of the same nucleus of operative facts." *Id.* (internal quotations and citations omitted). Here, although the legal theory and cause of action asserted by Alvarez-Valencia are somewhat unclear, he unquestionably seeks to undo the forfeiture of his vehicles in the prior judicial proceeding filed in this Court. In his Complaint, he argues that the government wrongfully took his vehicles even though no drugs were found within them. Thus, this action arises out of the same nucleus of operative facts as the forfeiture proceeding, and the evidence Alvarez-Valencia intends to use in this action—the absence of drugs in his vehicles—is the same evidence he would have used to defend against the forfeiture action. Accordingly, because all four elements of claim preclusion are met, further litigation of this claim is barred.

14

Finally, even if this court could consider the merits of the claim, as explained above, notice was sufficient as found by this court in *United States of America v. 2014 Ford F-150 Supercrew Truck, et al.*, Case No. 2:19-cv-00591-MHT-SRW (*See* Doc. 39-1 at 76-77), and pursuant to 19 U.S.C.A. § 1607(a)(4), 18 U.S.C.A. § 983(a), 28 C.F.R. § 8.9 (a)(1)(ii), and Supplemental Rule G(5) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims. As mentioned above, this court previously found that Alvarez-Valencia and his wife were both personally served by a deputy United States Marshal with copies of the notice and verified complaint in the forfeiture action. (Doc. 39-1 at 77). Accordingly, the Government gave Alvarez-Valencia "notice reasonably calculated, under all the circumstances, to apprise [him] of the pendency of the action and afford [him] an opportunity to present [his] objections." *Mullane* 339 U.S. at 314. Alvarez had notice and an opportunity to defend against the forfeiture action, but he failed to do so. The DEA's Motion to Dismiss will be granted as to the two Ford vehicles.

## III.    CONCLUSION

Accordingly, it is **ORDERED** that the Defendant's Motion to Dismiss (Doc. 39) is **GRANTED**, this case is **DISMISSED** with prejudice, and all other pending motions are **DENIED** as moot.

Final Judgment will be entered separately.

15

**DONE** and **ORDERED** on this the 16th day of July, 2026.

_____
**BILL LEWIS**
UNITED STATES DISTRICT JUDGE